## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                 No. CR 20-1627 JB

ANTONIO QUINTANA-PENA and
TAMRA WALLACE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Antonio Quintana-Pena's oral motion to: (i) elicit testimony regarding the date of the Superseding Indictment, filed December 20, 2022 (Doc. 52); and (ii) comment on the Superseding Indictment's timing during closing argument. The Court held a hearing on January 6, 2025. The Court denies the motion, because the Superseding Indictment's date is not evidence.

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18, 2013)(Browning, J.)(citing Fed. R. Evid. 802). Pursuant to rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999). A statement that is otherwise hearsay,

however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.  See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").

Applying these principles, in United States v. Goxcon-Chagal, No. CR 11-2002 JB, 2012 WL 3249473, at **5-6 (D.N.M. Aug. 4, 2006)(Browning, J.), the Court explains that defendants are not allowed "as a general matter" to introduce "their statements through other witnesses, because those statements are hearsay."  2012 WL 3249473, at **5-6 ("Thus, the United States and the Defendants agree on the general principle that the Defendants' statements to law enforcement officers are inadmissible hearsay.").  See 4 Stephen A. Saltzburg, Michael M. Martin, Daniel J. Capra, Fed. Rules of Evid. Manual § 801.02(6)(d), at 801-43 (2006)(regarding rule 801(d)(2), stating: "It follows that a party can never admit a statement in her favor under this rule; the statement must be offered by a part-opponent.").  Similarly, in United States v. Chaco, No. CR 10-3463, 2011 WL 3510748 (D.N.M. Aug. 6, 2011)(Browning, J.), the Court prohibits a defendant from introducing, through a law enforcement officer, the defendants' statements denying charges against him.  The Court explains that, although the United States of America is allowed under rule 801(d)(2) to introduce the defendant's statements, as "party opponent admissions," the defendant's introduction of the statements would be only to "prove the truth of the matter asserted," and thus rule 801(c) prohibits the defendants from introducing the same statements.  2011 WL 3510748, at *2.  The Court notes, additionally, that the United States does not object to the defendant taking the stand and testifying about his previous denials of the charges, and the Court rules that the defendant could take the stand and testify to his previous denials without violating the Federal

Rules of Evidence's prohibition on hearsay evidence.  <u>See</u> 2011 WL 3510748, at *1-2.

## <u>LAW REGARDING RULE 408 OF THE FEDERAL RULES OF EVIDENCE</u>

Rule 408 of the Federal Rules of Evidence reads as follows:

**(a)**    **Prohibited Uses.** Evidence of the following is not admissible -- on behalf of any party -- either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

**(1)** furnishing, promising, or offering -- or accepting, promising to accept, or offering to accept -- a valuable consideration in compromising or attempting to compromise the claim; and

**(2)** conduct or a statement made during compromise negotiations about the claim -- except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

**(b)**    **Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.  Rule 408's purpose, "according to the Advisory Committee's notes, is to foster honest attempts to settle controverted claims without resorting to expensive and time consuming litigation." <u>Bradbury v. Phillips Petroleum Co.</u>, 815 F.2d 1356, 1362-63 (10th Cir. 1987).

In determining whether or not the disputed evidence should have been excluded under Rule 408, we must first determine whether the rule applies under the circumstances of this case.  Rule 408 is limited in its application to evidence concerning the settlement or compromise of "a claim" when such evidence is offered to prove liability or validity of "<u>the</u> claim" (emphasis added) or its amount. Read literally, the rule does not appear to cover compromises and compromise offers that do not involve the dispute that is the subject of the suit, even if one of the parties to the suit was also a party to the compromise.

. . . .

In this case the settlement of the seven prior claims brought by landowners arguably involved claims that arose out of different events and transactions. Yet the stronger argument is that these claims are related inasmuch as they arose in the course of the same large scale uranium exploration project operated by Phillips, and

because they are similar enough to the claim sued upon in this case to be relevant. These factors, combined with the strong policy interest in encouraging the settlement of disputes without resort to litigation, is sufficient to bring the evidence concerning the seven compromises and settlements under the umbrella of Rule 408.

Bradbury v. Phillips Petroleum Co., 815 F.2d at 1363.[1]

Various United States Courts of Appeals have interpreted rule 408 to make inadmissible only statements that (i) are made in settlement negotiations, see, e.g., Morgan v. Baker Hughes Inc., 728 F. App'x 850, 857 (10th Cir. 2018)(unpublished)[2](affirming district court for excluding "statements" that were "plainly . . . 'the result of settlement negotiations'")(quoting Richards v. City of Topeka, 173 F.3d 1247, 1253 (10th Cir. 1999)); Mendelovitz v. Adolph Coors Co., 693

---

[1]As one commentator states:

> [E]ven where the settlement relates to prior claims that arguably arose out of different events and transactions, where these claims are related inasmuch as they arose in the course of the same project operated by the defendant, and the claims sued upon are similar enough to be relevant, there is a sufficient basis for bringing the evidence concerning the compromises and settlements under the umbrella of Fed. R. Evid. 408.

Tracy Bateman, et al., Inadmissibility of Conduct or Statements During Compromise Negotiations, 12 Fed. Proc., L. Ed. § 33:233 (2021)(citing Bradbury v. Phillips Petroleum Co., 815 F.2d 1356 (10th Cir. 1987)).

[2]Morgan v. Baker Hughes Inc., 728 F. App'x 850 (10th Cir. 2018) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Morgan v. Baker Hughes Inc. has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

F.2d 570 (5th Cir. 1982); (ii) relate to issues involved in the proceedings, see, e.g., Lyondell Chem. Co. v. Occidental Chem. Corp., 608 F.3d 284, 299 (5th Cir. 2010)("[T]he offering of settlement evidence arising out of a shared factual nexus and bearing directly on present issues of liability between many of the same parties falls within Rule 408's prohibition"); or (iii) offer to compromise or settle any claim in the action being litigated, see, e.g., Trans Union Credit Information Co. v. Associated Credit Services, Inc., 805 F.2d 188, 192 (6th Cir. 1986); General Leaseways, Inc. v. National Truck Leasing Ass'n, 830 F.2d at 716.  "Fed. R. Evid. 408 does not prevent the same party who submitted the material in the course of settlement discussions from using the material later at trial, because Fed. R. Evid. 408 is designed to avoid one party using material against the party who submitted the material for settlement purposes."  Tracy Bateman, et al., Inadmissibility of Conduct or Statements During Compromise Negotiations, 12 Fed. Proc., L. Ed. § 33:233 (2021)(citing Hulter v. C.I.R., 83 T.C. 663 (1984)).  The 2006 amendment to rule 408 "excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations."  Fed. R. Evid. 408 Advisory Committee Notes 2006 Amendment.

Courts regard discussions between two parties as settlement negotiations if: (i) the parties meet to talk about their interpretation of the disputed matter, with outside counsels' assistance, after the plaintiff filed an action, see Trans Union Credit Information Co. v. Associated Credit Services, Inc., 805 F.2d at 189-93; Olin Corp. v. Insurance Co. of North America, 603 F. Supp. 445 (S.D.N.Y. 1985), aff'd on re-argument, 607 F. Supp. 1377 (S.D.N.Y. 1985); (ii) parties' counsel agree that the discussions in the meeting would not be later used for any purpose, see Trans Union Credit Information Co. v. Associated Credit Services, Inc., 805 F.2d at 189-93; and (iii) parties' counsel concedes in a written communication between themselves that litigation was

possible, see Olin Corp. v. Insurance Co. of North America, 603 F. Supp. at 445.  See also Tracy Bateman et al., Inadmissibility of Conduct or Statements During Compromise Negotiations -- How to determine what is compromise negotiation, 12 Fed. Proc., L. Ed. § 33:234 (2021).

If "discussions ha[ve] not crystallized to the point of threatened litigation," communications between the parties are not considered compromise negotiations.  Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1373 (10th Cir. 1977)(concluding that business communications were admissible, because there was not threat of litigation).  See, e.g., Scavetta v. King Soopers, Inc., No. 10-CV-02986-WJM-KLM, 2013 WL 2393070, at *2 n.2 (D. Colo. May 31, 2013)(Martinez, J.)(excluding a settlement agreement, because the plaintiff "threatened litigation in an e-mail dated December 16, 2009, reading in pertinent part: 'I will be seeking other legal remedies to my wrongful termination outside of the union.'")(quoting trial record); Arnold Oil Properties, L.L.C. v. Schlumberger Tech. Corp., No. CIV-08-1361-TDD, 2010 WL 3604094, at *3 (W.D. Okla. Sept. 9, 2010)(DeGiusti, J.)("[T]he fact that the parties met to discuss what happened and to resolve a problem does not mean they were engaged in compromise negotiations.  There is no suggestion that the discussions had crystallized to the point of threatened litigation . . . .").

> Where litigation has not been commenced or threatened, communications between parties are not considered compromise negotiations.  Thus, business communications between companies that have not reached that point, an admission in a conversation during an informal investigation, an effort to head off a criminal prosecution rather than resolve a civil claim, and a mere effort to buy time in which to pay an obligation, even though the validity of the obligation is later disputed have been considered admissible as outside Fed. R. Evid. 408.  Likewise, a bill that itemizes what the sender thinks the recipient owes, and demands payment, even under threat of legal action, is not an offer in settlement or a document in settlement negotiations excludable under Rule 408.

Tracy Bateman et al., Inadmissibility of Conduct or Statements During Compromise Negotiations

-- How to determine what is compromise negotiation, 12 Fed. Proc., L. Ed. § 33:234 (2021)(footnotes omitted).

Settlement evidence is not automatically admissible because a party offers it for "another purpose" under rule 408. Fed. R. Evid. 408 ("The court may admit this evidence for another purpose . . . ."). See Bradbury v. Phillips Petroleum Co., 815 F.2d at 1363 ("Rule 408 does not exclude compromise evidence in all situations, but only where the evidence is offered to prove "liability for or invalidity of the claim or its amount."  The rule does not require exclusion when the evidence is offered 'for another purpose . . . .'")(quoting Fed. R. Evid. 408); U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc., 896 F.2d 949, 956 (5th Cir. 1990)("The district court has broad discretion in determining whether to admit evidence of settlement for another purpose and we will not disturb that decision lightly."); Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, Federal Rules of Evidence Manual, Rule 408, at 603-04 (7th Ed. 1998).  See Sec. & Exch. Comm'n v. Goldstone, 317 F.R.D. 147, 165 (D.N.M. 2016)(Browning, J.)(same).  Courts admit settlement evidence for these purposes under different circumstances.  In Belton v. Fibreboard Corp., 724 F.2d 500 (5th Cir. 1984), for example, the United States Court of Appeals for the Fifth Circuit approves a trial court's "admission of the evidence to prevent confusion of the jury."  724 F.2d at 505.  See Sterling Sav. Bank v. Citadel Dev. Co., 656 F. Supp. 2d 1248, 1256 (D. Or. 2009)(Haggerty, J.)("Courts have also used their discretion to admit evidence in other situations, such as to prevent confusion for the jury.").  Other courts recognize that settlement evidence may be relevant to bias.  See Sec. & Exch. Comm'n v. Goldstone, No. CIV 12-0257 JB/LFG, 2016 WL 3854689, at *22 (D.N.M. June 3, 2016)(Browning, J.)(admitting evidence, because the defendants seek to "'prov[e] a witness's bias or prejudice,' which is a permissible purpose")(quoting Fed. R. Evid. 408(b)); S.E.C. v. Conaway, 698 F. Supp. 2d 771, 867 (E.D. Mich. 2010)(Pepe, M.J.) ("In

discounting certain of the McDonald testimony, the jury could also consider his potential bias because he had for years been a co-defendant and he settled with the SEC a month before trial because he 'just had enough.'"); Brocklesby v. United States, 767 F.2d 1288, 1292-94 (9th Cir. 1985)(admitting a defendant's indemnity agreement with a third party to show: (i) that the defendant and a government defendant were not adverse; and (ii) to attack the defense witnesses' credibility); S.E.C. v. Retail Pro, Inc., No. 08-CIV-1620-WQH/RBB, 2011 WL 589828, at *6 (S.D. Cal. Feb. 10, 2011)(Hayes, J.)(noting that the parties could introduce evidence of consent decrees to rebut specific witnesses' testimony); Young v. U.S. Postal Serv., No. 86-CIV-9492 RLC, 1988 WL 126906, at *2 (S.D.N.Y. Nov. 23, 1988)(Carter, J.).

"Settlement agreements, however, are inadmissible regardless of relevance if offered to establish liability for or the amount of a claim or if introduction thereof would result in undue prejudice to an opposing party." Trout v. Milton S. Hershey Med. Ctr., 572 F. Supp. 2d 591, 596 (M.D. Pa. 2008)(Conner, J.). The Court has excluded evidence of settlement agreements. In Leon v. Fedex Ground Package System, Inc., a deceased passenger's widow brought two wrongful death actions: one against FedEx Ground, and another against two other parties. See 163 F. Supp. 3d 1050, 1069-71 (D.N.M. 2016)(Browning, J.). The widow settled with the second group, and later moved to preclude FedEx Ground from admitting settlement evidence at trial under rule 408. See 163 F. Supp. 3d at 1054-55. FedEx Ground argued that the settlement evidence's absence would confuse the jury. See 163 F. Supp. 3d at 1069-71. The Court excluded the settlement evidence on the grounds that: (i) "[i]nforming jurors that [the other defendants] settled could cause them to unfairly decrease FedEx Ground's share of the liability"; (ii) the jury could "assume that this is an admission of guilt"; and (iii) jury instructions provided an alternative means of mitigating any jury confusion. 163 F. Supp. 3d at 1070. On a similar basis, in Sec. & Exch. Comm'n v. Goldstone,

the Court concludes that the evidence of a settlement agreement's "unfair prejudice to the Defendants is greater than the potential danger of jury confusion." Sec. & Exch. Comm'n v. Goldstone, 317 F.R.D. 147, 165 (D.N.M. 2016)(Browning, J.)(citing Trout v. Milton S. Hershey Med. Ctr., 572 F. Supp. 2d at 596, and Leon v. Fedex Ground Package System, Inc., 163 F. Supp. 3d at 1068-71). In SFF-TIR, LLC v. Stephenson, 250 F. Supp. 3d 856 (N.D. Okla. 2017)(Browning, J), the Court excludes some evidence of settlement negotiations, where, for instance, a "letter's plain language clearly establishes that the letter was an offer to compromise a claim for less than what the Plaintiffs held to be the fair market value for their shares," but excluded other evidence because the evidence was (i) not compromise offers between the plaintiffs and the defendants; and (ii) was unlikely to mislead or confuse the jury. 250 F. Supp. 3d at 1059-1060.

## LAW REGARDING RULE 410 OF THE FEDERAL RULES OF EVIDENCE

Generally, evidence of a guilty plea or statements made in plea negotiations are inadmissible. See Fed. R. Evid. 410; United States v. Mitchell, 633 F.3d 997, 1002 (10th Cir. 2011)("As a general matter, evidence of a guilty plea or statements made in plea negotiations are inadmissible."). Rule 410 provides:

**Pleas, Plea Discussions, and Related Statements**

**(a)    Prohibited Uses.** In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

> **(1)**    a guilty plea that was later withdrawn;
>
> **(2)**    a nolo contendere plea;
>
> **(3)**    a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty

plea.

Fed. R. Evid. 410. "The Rule applies whether plea discussions are initiated by the defendant, by the defendant's attorney, or by a representative of the prosecutor." 2 Weinstein's Federal Evidence § 410.09 (2024). Rule 410(b) allows the court to admit a statement 410(a)(3) or (4) describes, however, in two circumstances. First, "if the defendant introduces statements made during plea discussions, then other relevant statements made in the same plea discussions are admissible, if 'in fairness the statements ought to be considered together'" with the defendant's statement. 2 Weinstein's Federal Evidence § 410.10 (quoting Fed. R. Evid. 403(b)(1)). This exception operates in conjunction with rule 106, which permits the admission of the remainder of a statement or document if such admission is necessary to explain the portion of the statement or document already admitted. See 2 Weinstein's Federal Evidence § 410.10 n.2 (citing Fed. R. Evid. 106); United States v. Doran, 564 F.2d 1176, 1177 (5th Cir. 1977)(applying the invited-error doctrine, and declining to reverse a defendant's conviction when the defendant testified at trial that he refused a plea offer because is innocent, and the prosecutor asked him about a counter-offer he made to the government). Second, courts may admit 410(a)(3) or (4) statements "in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present." Fed. R. Evid. 410(b)(2).

## ANALYSIS

In closing argument, "counsel may not refer to, or rely upon, evidence unless the trial court has admitted it." United States v. Maddox, 156 F.3d 1280, 1282 (D.C. Cir. 1998)(Randolph, J.)( citing United States v. Small, 74 F.3d 1276, 1280 (D.C.Cir.1996); United States v. Boyd, 54 F.3d 868, 871 (D.C.Cir. 1995); United States v. Foster, 982 F.2d 551, 555 (D.C. Cir.1993); and United States v. Teffera, 985 F.2d 1082, 1088, 1089 n.6 (D.C. Cir.1993)). The question, then, is whether

the Superseding Indictment's date is evidence.  If the date is evidence, counsel may refer to the date in a closing argument.  If the date is not evidence, counsel may not refer to the date.

The United States Court of Appeals for the Tenth Circuit's Pattern Jury Instructions define evidence as "only what the witnesses said while they were testifying under oath, the exhibits that [the Court] allowed into evidence, the stipulations that the lawyers agreed to, and the facts that [the Court has] judicially noticed."   Tenth Circuit Criminal Pattern Jury Instructions 1.06 at 13 (2021).  Instruction 1.07 further defines circumstantial evidence as: "the proof of a chain of facts which point to the existence or non-existence of certain other facts."  Tenth Circuit Pattern Jury Instruction 1.07.  These definitions foreclose the notion that the Superseding Indictment's date is evidence, such that counsel may reference the date in closing argument.  The Superseding Indictment's date is not direct evidence, like eyewitness testimony, that provides proof of a fact itself.  It also is not circumstantial evidence.  There is no chain of inferences that begins with the Superseding Indictment's date and points to the existence or non-existence of other facts relevant to the elements of the crimes with which the Grant Jury has charged Quintana-Pena.  It follows, consequently, that testimony from a witness about the Superseding Indictment's date is inadmissible pursuant to rule 401.  See Fed. R. Evid. 401(a)(defining relevance evidence as that with "any tendency to make a fact more or less probable than it would be without the evidence").  Accordingly, neither party may seek to elicit testimony about the Superseding Indictment's date or timing from a witness, and neither party may comment on the Superseding Indictment's date or timing during closing argument.

Quintana-Pena wants to talk about the Superseding Indictment's date, because the original Indictment was filed August 25, 2020 (Doc. 2).  See Draft Transcript of Hearing at 75:2-12, taken

January 6, 2025 (Pori)("Tr.").[3]  Apparently, there were plea negotiations after that, which failed.
<u>See</u> Tr. at 77:7-16 (Hirsch).  The Grand Jury then filed the Superseding Indictment.  <u>See</u>
Superseding Indictment at 1.  Quintana-Pena wants to ask a federal agent why there was a delay
in filing the Superseding Indictment.  <u>See</u> Tr. at 82:19-25 (Pori).  The agent will respond that the
Superseding Indictment was not filed while the negotiations were ongoing.  <u>See</u> Tr. at 83:3-10
(Hirsch).  Quintana-Pena wants the jury to draw two inferences from these facts: (i) that he rejected
the plea agreement, which is a means of getting his denial of the charges before the jury; and (ii)
that the United States' case is weak.

As to the first inference, normally, the defendant does not get his or her testimony before
the jury unless the defendant takes the stand.  <u>See</u> <u>United States v. DeLeon</u>, 558 F. Supp. 3d 1105,
1122 (D.N.M. 2021)(Browning, J.)(quoting <u>United States v. Cunningham</u>, 194 F.3d 1186, 1199
(11th Cir. 1999))("Hearsay bars a party from presenting its own statements, such as 'a
defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest
without subjecting himself to cross-examination.'").  Accordingly, if Quintana-Pena wishes to
inform the jury that he rejected a plea offer, he must do so by taking the stand.  "Evidence" that
Quintana-Pena rejected a plea offer, moreover, is cumulative.  The Court will tell the jury in its
preliminary jury instructions that Quintana-Pena has denied the charges.  <u>See</u> 10th Circuit Pattern
Jury Instruction 1.01 ("The defendant pleaded not guilty and is presumed innocent.").  The jury
knows that Quintana-Pena denies the charges, or else it would not be hearing the case.

As to the second inference, the Court is having some trouble understanding the argument.

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

The Court does not see how the date of the Superseding Indictment indicates the weakness of the case.  Again, the questions about delay appear to be largely, if not entirely, aimed at getting answers about the unsuccessful plea negotiations before the jury.  The Court does not see how that issue is relevant to the essential elements of the crimes charged in this case.

**IT IS ORDERED** that Defendant Antonio Quintana-Pena's oral motion to: (i) elicit testimony regarding the date of the Superseding Indictment, filed December 20, 2022 (Doc. 52); and (ii) comment on the Superseding Indictment's timing during closing argument is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex M. M. Uballez
  United States Attorney
David B. Hirsch
Nicholas Blake
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Brian A. Pori
Albuquerque, New Mexico

     *Attorney for the Defendant*